FILED
SEP 2 2015
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY            DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br>vs.<br><br>JUAN CADENA-MOLINA,<br><br>                      Defendant. | CASE NO. 15cr181-BEN<br><br>ORDER DENYING MOTION TO DISMISS INDICTMENT DUE TO INVALID DEPORTATION |

Now before the Court is Defendant's Motion to Dismiss the indictment due to invalid deportation (filed May 18, 2015). Upon review, this Court finds at least one underlying removal to be valid. Therefore, the motion is denied.

## I. BACKGROUND

Defendant is charged with the crime of Attempted Reentry of a Removed Alien in violation of 8 U.S.C. § 1326(a) and (b). From the record before the Court, it appears that there is no dispute as to the following salient facts. Defendant is a citizen of Mexico. On December 11, 2014, he was apprehended beyond Mexico's northern border, in San Ysidro, California, United States. That arrest gives rise to the criminal charge.

According to the Government, Mr. Cadena-Molina was first ordered removed from the United States by an immigration judge on May 10, 2000. The 2000 removal order was reinstated twice: on December 5, 2002 and on September 8,

2004. Defendant was removed to Mexico each time.

Cadena-Molina was again ordered removed from the United States by an immigration judge on July 15, 2007. The 2007 removal order was reinstated four more times: on March 25, 2010, on September 20, 2010, September 24, 2010, and on February 8, 2011. Defendant was removed to Mexico each time.

Defendant has been convicted of numerous crimes in numerous places over twenty years, according to the rap sheet attached to Defendant's brief. In 1995, he was convicted in Los Angeles of P.C. § 273.5 inflicting corporal injury on a spouse/cohabitant. In 1997, he was convicted in Los Angeles of P.C. § 245(A)(1) force/assault with a dangerous weapon not a firearm: great bodily injury likely. Two days later, he was convicted in Los Angeles of P.C. § 242-243(D) battery. In 1999, he was convicted in Los Angeles of VC § 14601.1(A) driving while license suspended. Later in 1999, he was convicted in Clark County of petit larceny. In 2000, he was convicted in Salt Lake City of retail theft (shoplifting). Later in 2000, he was convicted in Ogden of theft. In 2001, he was convicted in Utah of 8 U.S.C. §1326 illegal reentry of a deported alien. In 2003, he was convicted in Arizona of 8 U.S.C. §1326 illegal reentry of a deported alien. In 2005, he was convicted in Alhambra of P.C. § 415(2) disturbance by loud/unreasonable noise. In 2008, he was convicted in Los Angeles of P.C. § 245(A)(1) force/assault with a dangerous weapon not a firearm: great bodily injury likely. In 2010, he was convicted in Los Angeles of P.C. § 594(A) vandalism. Later in 2010, he was convicted in Los Angeles of P.C. § 243(B) battery on a peace officer/emergency personnel/etc. Lastly, in 2011, he was again convicted in California of 8 U.S.C. §1326 illegal reentry of a deported alien.

Defendant has moved to dismiss the indictment pursuant to 8 U.S.C. § 1326(d). He argues that the deportation orders in 2000 and 2007 were fundamentally unfair and violated his right to due process because each time the immigration judge failed to advise him of, or meaningfully consider, his right to

apply for relief in the form of voluntary departure.

While it is arguable that the immigration judges did not go far enough to advise or consider Cadena-Molina's eligibility for voluntary departure during both the 2000 and 2007 deportation hearings, he could not have suffered legal prejudice. Cadena-Molina could not have been eligible for voluntary departure more than once. *See* 8 U.S.C. § 1229c(c); *see also United States v. Vivanco-Gonzalez*, 286 F. App'x 483 (9th Cir. 2008) ("We conclude that Vivanco-Gonzalez cannot demonstrate prejudice from any due process violation because he was also removed in 1998, and he could not have been eligible for pre-hearing voluntary departure as to both removals."); *United States v. Excobar-Menjivar*, 407 F. App'x 231 (9th Cir. 2011).

## II. CHALLENGING THE UNDERLYING REMOVAL ORDER

An alien who has been deported or removed commits a crime if the alien thereafter "enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a). One method of violating § 1326 is returning to the United States after issuance of a prior removal order. *See id.* § 1326(a)(1); *see also United States v. Vidal-Mendoza*, 705 F.3d 1012, 1014-15 (9th Cir. 2013). One method of defending against a charge of violating § 1326(a) or (b) is through collaterally attacking the underlying removal order(s) under § 1326(d). The collateral attack, however, must meet three conditions:

> Congress has strictly limited an alien's ability to bring a collateral challenge to such an order. An alien facing criminal charges may initiate a collateral attack on the underlying order only if "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."

*United States v. Hernandez-Arias*, 757 F.3d 874, 879-80 (9th Cir. 2014) (citations omitted).

If the alien establishes a due process violation that prevented his waiver of

- 3 -

appeal from being knowing and intelligent, he is excused from the exhaustion requirement. *Id.* The Due Process Clause guarantees an individual charged with illegal reentry under 8 U.S.C. § 1326 the opportunity to challenge a prior removal that underlies the criminal charge. *United States v. Garcia-Santana*, 743 F.3d 666 (9th Cir. 2014). The mechanics of such a challenge are the product of thousands of judicial decisions over several decades. Many such challenges focus on whether the underlying criminal conviction qualifies as an "aggravated felony" under the immigration statutes. *Id.* at 670-72. Not this case.

This case focuses on an immigration judge's duty to tell about forms of relief from deportation for which the alien may be eligible; voluntary departure under Title 8 U.S.C. § 1229c(a), for example. And if an alien at a deportation hearing is eligible for voluntary departure, an immigration judge has a duty to "advise" the alien of his right to seek voluntary departure. *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012).

And not just "advise," but to "meaningfully advise." *Id.* In 2007, Cadena-Molina was "advised." But he argues that he was not "meaningfully advised." In Cadena-Molina's case in 2007, the immigration judge's colloquy went like this:

| | | |
|---|---|---|
| IJ: | Do you want to request voluntary departure? | |
| Cadena: | Yes, your honor. | |
| IJ: | Have you been deported before? | |
| Cadena: | Not that I recall, your honor.[1] | |
| IJ: | Have you ever been in jail before? | |
| Cadena: | Yes, your honor. | |
| IJ: | For how long? | |

---

[1] Cadena-Molina's recollection was imperfect. He had been previously deported in 2000, 2002, and 2004.

| | | |
|---|---|---|
| Cadena: | One year.[2] | |
| IJ: | Well, based on that, sir, I'm going to deny your request for voluntary departure. | |

Whether this type of colloquy amounts to a "meaningful advisal" is a question of first impression. It falls somewhere between the two ends of the advisal spectrum defined by the case of *Melendez-Castro* at one end, and *United States v. Gonzalez-Flores*, __ F.3d __, 2015 WL 3540928 (9th Cir. Jun. 8, 2015), at the other end.

In *Melendez-Castro*, "[a]lthough the IJ at first told [the alien] that he was eligible for voluntary departure, almost in the same breath the IJ told him that he would not get the relief if he applied for it because he had a criminal record." 671 F.3d at 954. This was deemed to fall short of a "meaningful advisal."

On the other hand, in *Gonzalez-Flores*, the IJ "asked a series of questions to draw out information relating to [the alien's] eligibility for immigration relief." *Id.* at *1. The IJ asked about whether the alien had a spouse or children and whether his parents were citizens or lawful permanent residents. The IJ asked about when the alien first came to the United States. The IJ asked about the alien's criminal record. The IJ then, *on the record*, evaluated both the positive equities and the negative equities of the alien's case before denying voluntary discretion. This was deemed sufficient.[3] *Id.* at *5. The IJ raised the availability of such relief and explored it.

Cadena-Molina's case falls between these two extremes. It is slightly closer to the *Melendez-Castro* case, because the IJ did not ask about any potential positive

---

[2] Cadena-Molina's recollection was again imperfect. If his rap sheet is correct, prior to the hearing he had been sentenced to jail on several occasions, for periods of 47 days (1995), 60 days and 90 days (1997), 20 days and 30 days (1999), 180 days and 30 days (2000), 30 months (2001), 24 months (2003), and 2 days (2005).

[3] The Ninth Circuit alternatively held that Gonzalez–Flores had failed to carry his burden of showing a grant of relief was plausible. 2015 WL 3540928 at *5-6.

equities (he had some) and did not indicate *on the record* that he had considered both positive and negative equities before denying voluntary departure. Therefore, this might have amounted to a due process defect in the proceeding.[4]

The 2000 deportation proceeding record is less satisfactory. There, the only reference to an advisal *on the record* comes near the end of the proceeding. The IJ states: "And, as I understand it, you don't wish to defer or delay these proceedings, *to be considered for any relief* in these proceedings, you wish the court today to enter orders so that you can begin the process of completing these proceedings as quickly as possible," and then asks, "Am I correct, to all five of you?" (Emphasis added.) Of course, the implication is that the IJ, or his staff, or perhaps by some other means, discovered before the official hearing that the aliens did not want to be considered for voluntary departure (it was a group hearing). But if the IJ did "meaningfully advise" Cadena-Molina, the advisal is dehors the record. Consequently, the 2000 hearing may also be defective. And Cadena-Molina might have been granted voluntary departure in 2000 when his negative equities were less numerous, if he were eligible for consideration. Had Cadena-Molina been prejudiced (in the legal sense) the deportation would not support the present prosecution.

The problem for Cadena-Molina is that an alien is only entitled to relief in the form of voluntary departure one time. *See* 8 U.S.C. § 1229c(c). If he was eligible in 2000, and not advised, he may have been prejudiced then. But he would not have been eligible again in 2007. So, in the 2007 hearing, the IJ could not have failed to meaningfully advise Cadena-Molina of a form of relief to which he was not entitled.

---

[4] "'It is well settled in the case law that government officials are presumed to act conscientiously and in good faith in the discharge of their duties.' *Libertatia Associates, Inc. v. United States*, 46 Fed. Cl. 702, 706 (2000); *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of *clear evidence* to the contrary, courts presume that they have properly discharged their official duties."); *Ross v. Reed*, 14 U.S. (1 Wheat.) 482, 486 (1816) ("It is a general principle to presume that public officers act correctly until the contrary be shown.").

And if the IJ did not fail, then there was no due process violation from which legal prejudice could flow.

Consequently, Cadena-Molina finds himself in the same position as the defendant in *Vivanco-Gonzalez*. 286 F.App'x 483. Cadena-Molina "cannot demonstrate prejudice from any due process violation because he was also removed in [2000], and he could not have been eligible for pre-hearing voluntary departure as to both removals." *Id.*; *see also United States v. Rojas-Pedroza*, 716 F.3d 1253, 1264 (9th Cir. 2013) (noting the opportunity for voluntary departure statutorily available only once).

### III. CONCLUSION

Defendant's motion to dismiss the indictment due to invalid deportation is denied.

DATED: ~~August~~ Sept. 2, 2015

Hon. Roger T. Benitez
United States District Judge